UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEVIN HOWELL,

                    Plaintiff,                              Case No. 1:21-cv-69

v.                                                          Honorable Janet T. Neff

UNKNOWN MAYHEW et al.,

                    Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the

Court is required to dismiss any prisoner action brought under federal law if the complaint is

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C.

§ 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*,

404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these

standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant

Shiemburger.  The Court will also dismiss, for failure to state a claim, the following claims against

the remaining Defendants:  Plaintiff's due process claims concerning his grievances and his

property; his due process claims based on prison policy; his First Amendment claim under the

Petition Clause; his Eighth Amendment claim against Defendant Bostwick based on the denial of

one or more meals; his Eighth Amendment claims against Defendants Balm and Globe based on

verbal harassment; and his retaliation claims against Defendants Mayhew, Wart, Globe, Mackiey, Bostwick, and Balm.

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues the following ECF officials:  Correctional Officers Unknown Mayhew, Unknown Wart; Unknown Shiemburger, Unknown Bostwick, and Unknown Balm; Sergeant Unknown Mackiey; and Nurse K. Globe.

The allegations of Plaintiff's complaint are rambling, going back and forth in time over the course of the complaint.  In addition, many of the allegations lack specificity.  The complaint also contains many misspelled words, while other essential words are missing from sentences.  As a result, the complaint is somewhat difficult to decipher, and the Court will summarize the allegations to the best of its ability.

It appears that Plaintiff arrived at ECF in August 2018.  Sometime after he arrived, he met Defendant Globe, who had known him 16 years earlier and knew his ex-girlfriend.  Globe approached Plaintiff during med line and told him that, unless he did what she wanted, she would "f*ck my life over . . . ."  (Compl., ECF No. 1, PageID.5.)  Defendant Globe then looked Plaintiff up on the MDOC's Offender Tracking Information System (OTIS).  In February 2019, Globe started rumors, falsely telling "everyone" that Plaintiff was a rapist and alleging that Plaintiff had raped her.  (*Id.* at 5–7.)  Plaintiff denies being a rapist.[1]  Plaintiff filed a grievance against Defendant Globe.

---

[1] Plaintiff presently is incarcerated on a conviction for assault with intent to commit sexual penetration, in violation of Mich. Comp. Laws § 750.520g(1).  In addition, Plaintiff has been discharged from a sentence imposed in 2005 for accosting a child for immoral purposes, Mich. Comp. Laws § 740.145a.  Plaintiff pleaded guilty to both charges.  *See*

Plaintiff alleges that he placed a grievance in the mailbox on October 29, 2020. (*Id.*, PageID.10). Defendants Wart and Mayhew "started abusive actions over my filings as threat[en]ing me." (*Id.*, PageID.7.) Plaintiff states that he began to experience harassment as a result of "these rumors" and that the rumors have resulted in "fighting and [Wart and Mayhew] talk[ing] smack" against him for more than one year. (*Id.*, PageID.6, 8.) Plaintiff alleges that ECF officials

> run like a gang. When inmate[]s file grievances, they call us snitch[e]s. They start get other staff who get up start same attack[]s upon us. They even pay inmate[]s to jump us inmate[]s.
>
> . . .
>
> Correctional Officer Bostwick and Correctional Officer Mayhew are top leading of the gang. As Sgt. Ward place[]s attack in orders in order[]s of harm inmate[]s to.

(*Id.*, PageID.6–7.) Plaintiff also contends that Defendant Mayhew became angry about the grievance and took his property that same date, and Defendant Balm refused to return it to Plaintiff. Plaintiff's property was not returned to him until January 10, 2021, when Correctional Officer Tayler (not a defendant) delivered it. Officer Taylor told Plaintiff that the property had been in the back room for months, having been placed there by Defendants Wart and Mayhew. (*Id.*, PageID.13, 17.)

In October 2020, likely on October 31, inmate "Mark" told Plaintiff that Plaintiff had to get off the unit and that Mark had to handle undescribed "business" for Defendant Mayhew. Suddenly, Mark pulled a "Shawen"[2] out of his waistband. (*Id.*, PageID.8.) In fear, Plaintiff punched Mark and beat him up. (*Id.*) Plaintiff was removed by guards and placed in a cage in the interview room for the weekend of October 31 through November 2, 2020. Defendants Wart and

---

MDOC Offender Tracking & Info. Sys., https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=240303 (visited May 18, 2021).

[2] The Court assumes that Plaintiff intends to refer to a "shank," prison slang for a stabbing implement.

Mayhew came into the interview room.  Plaintiff told them to leave him alone.  They responded that Plaintiff would die in the unit and suggested that he kill himself.  They also stated that he had "hurt a good woman," referring to Defendant Globe.  (*Id.*, PageID.9.)  Defendants Wart and Mayhew also allegedly began harassing Plaintiff because he refused to bring drugs into the facility and refused to write a note to his ex-girlfriend, as Globe demanded.  (*Id.*, PageID.9)  After being in the cage for three days, Plaintiff was placed in a segregation cell with no working lights.  (*Id.*, PageID.14.)

Plaintiff alleges that he spoke with his mental health worker on October 30, 2020.  On November 2, he asked to speak with the provider again.  Defendant Bostwick allegedly told Plaintiff that he was "being taken out back as a dead nig*er that week."  (*Id.*)  Bostwick also told Plaintiff that he did not deserve to breathe the same air as Bostwick.  (*Id.*, PageID.9.)  Bostwick also refused Plaintiff food on one occasion, indicating that he had not yet had a bowel movement, and feces were all Plaintiff was getting to eat that week.  (*Id.*, PageID.9, 14.)  In addition, Defendant Bostwick suggested loudly that the officers should take Plaintiff's photograph and use it as a target at the shooting range.  (*Id.*, PageID.14.)  That same date, while Plaintiff was seeing the doctor, Defendant Mayhew trashed his cell during a room search.  Plaintiff asked Defendant Mayhew to stop harassing him, and Mayhew responded, "[Y]ou['re] victim[]s don't forget."  (*Id.*, PageID.15.)

Plaintiff also alleges that, while Defendant Wart is on rounds, he says "little threaten[ing] things" and calls Plaintiff names.  (*Id.*, PageID.9, 14.)  Plaintiff and witnesses wrote to Ms. Holden (not a defendant), who indicated that she would speak with Defendant Bostwick.  (*Id.*, PageID.9.)

On November 2, 2020, Defendants Mayhew, Mackiey, and Balm allegedly beat Plaintiff.  (*Id.*, PageID.11.)  Elsewhere, Plaintiff alleges that Defendants Mayhew and Balm and

4

non-defendant Farley entered his cell and beat him with closed fists.  In addition, Defendant Mackiey kicked Plaintiff and Defendant Balm pepper-sprayed him.  (*Id.*, PageID.17.)  Plaintiff also alleges that his head was beaten against the wall while he was in the segregation shower. Defendant Balm and an unidentified correctional officer purportedly bragged about the beating, stating that the "only way o[u]t of this prison is dead." (*Id.*, PageID.11.)

Plaintiff asserts that Defendant Mayhew has a close relationship with Defendant Globe.[3]  And Correctional Officer Mitchell (not a defendant) told Plaintiff that Defendants did not like him and that he should watch his back.  (*Id.*)  Defendants Mackiey and Mayhew told Plaintiff that he was going to be killed.  Plaintiff alleges that they beat him up because Defendant Globe put out a hit on him and because they wanted to steal his property.  (*Id.*)

After returning to his unit ten or fifteen days after his fight with prisoner Mark, Plaintiff was placed on toplock, or room restriction.  (*Id.*, PageID.9, 11.)  Defendants Bostwick and Mayhew allegedly began again to "mess" with Plaintiff.  (*Id.*, PageID.8.)  Plaintiff alleges that Defendants' actions, including daily room searches for some period, have been committed in "retaliation." (*Id.*)  He also alleges that Defendant Bostwick routinely kicked Plaintiff's door during second shift, that unspecified officers threatened him, and that the problems have caused him to see his mental health provider often.  Plaintiff complained to Assistant Resident Unit Supervisor (ARUS) Johnson (not a defendant), who told Plaintiff not to complain to her about Defendant Globe, as Globe was a dear friend of hers.  (*Id.*)  Defendant Shiemburger allegedly spit in Plaintiff's face once and refused to give Plaintiff his food trays on unspecified occasions.  (*Id.*, PageID.13.)

---

[3] According to one of Plaintiff's attached witness statements, Defendant Mayhew offered the witness $5,000.00 to rape and stab Plaintiff.  The affidavit also indicates that Defendant Globe was fired from ECF and that Defendant Mayhew told the witness that Globe was in contact with the other Defendants and ordered the hit on Plaintiff.  (Ex. A to Compl., ECF No. 1-1, PageID.26.)

At some point, Plaintiff covered his cell-door window, a practice that Plaintiff alleges is common when inmates are using the toilet. Defendants Mackiey and Mayhew came into Plaintiff's cell. Plaintiff was crying because of the harassment. Mackiey told Plaintiff not to cover his window. When Plaintiff asked for his property, Mayhew refused it, and Mackiey advised Plaintiff not to cover his window. Plaintiff asked to see the shift commander, but that, too, was denied. Defendant Mackiey told Plaintiff, "[L]isten I'll beat your ass, you better shut your mouth, [and] follow his orders." (*Id.*, PageID.16.). After the officers left, Defendant Mayhew came back and told Plaintiff to be ready, because officers planned to "beat[] your f*cking head in after count[;] be ready." (*Id.*) Plaintiff told Defendants that what they were doing was wrong and that property must be returned in 24 hours under prison policy. On January 10, 2021, Officer Taylor (not a defendant) returned Plaintiff's property to him, he had found it in a closet in the back room, where it had been for months after being placed there by Defendants Wart and Mayhew. (*Id.*, PageID.13, 17.)

Plaintiff alleges that Defendants are trying to kill him based on rumors that he is a rapist and a "child-offender," which he denies. (*Id.*, PageID.10.) Plaintiff states that, after returning to the unit, he did not receive his property for months, contrary to policy and practice. He complains that Defendants give cell phones, drugs, and other items to prisoners who help them, and that there is a gang at the facility. (*Id.*) Plaintiff also alleges that Defendants continue to call him a "rat," and he is likely to be attacked again. (*Id.*, PageID.18.) Defendant Bostwick allegedly suggested loudly that Defendants go to the practice range on the weekend and use Plaintiff's photo as a target. (*Id.*, PageID.14.) Further, Defendant Shiemburger allegedly spit in Plaintiff's face and denied him meals on unspecified occasions. (*Id.*, PageID.13.)

In addition, Plaintiff complains that, because the prisoner grievance system lacks confidentiality, correctional officers know when inmates file grievances and remove or destroy the

grievances before they reach the grievance coordinator.  Plaintiff asserts that, when prisoners raise the problem with the grievance coordinator, she tells them that she does not care and that it's not her problem.  (*Id.*, PageID.6–7.)

Plaintiff complains that Defendants' interference with the grievance process violated his rights under the First and Fourteenth Amendments.  Plaintiff alleges that Defendants Mayhew and Balm took his property and refused to return it for months, in violation of his rights under the Due Process Clause of the Fourteenth Amendment.  He also complains that Defendants' harassing, threatening, assaultive, and retaliatory conduct violated the First and Eighth Amendments and prison policy.  Plaintiff further contends that Defendant Globe violated her duty and committed Eighth Amendment violations by ordering the assault.  In addition, Plaintiff asserts that Defendants removed grievance forms from his cell, ostensibly in violation of the Due Process Clause of the Fourteenth Amendment.  He further contends that the facility violated the Eighth and Tenth Amendments by failing to adequately investigate Defendants' criminal conduct.  He also alleges that Defendants have slandered him, in violation of the First Amendment.

Plaintiff seeks injunctive relief in the form of an order directing Defendants and the prison to cease their activities, transfer Plaintiff to another facility, establish more secure grievance procedures, fire Defendants, and implement better training.  Plaintiff also seeks access to the Michigan State Police for investigation of the incidents.  Finally, Plaintiff seeks compensatory damages of $50,000 against each Defendant.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

8

### III.     Due Process—Violations of policy

Plaintiff alleges at various points in his complaint that Defendants have violated one or more prison policies.  Arguably, Plaintiff intends to raise his claim under the Due Process Clause.

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007).  To demonstrate a violation of procedural due process claim, a plaintiff must prove the following elements:  (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process.  *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Without a protected liberty or property interest, there can be no federal procedural due process claim."  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure.  *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992).  Plaintiff's allegations that multiple Defendants violated prison policy therefore fail to raise a cognizable federal due process claim.

## IV.     Grievance process

Plaintiff alleges that the grievance process is inadequate because it is not confidential and prison officials routinely interfere with it.  He claims that Defendants' interference with his grievances and the non-confidential grievance process violate his right to due process under the Fourteenth Amendment, as well as his rights under the First Amendment.[4]

Plaintiff has no due process right to file a prison grievance.  The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Plaintiff next claims that Defendants' interference with the processing of his grievance and the absence of a confidential grievance process violated Plaintiff's First Amendment right to petition the government for redress.  The First Amendment stops the government from generally prohibiting expressions in the form of petitions for redress and from imposing sanctions on one who petitions for redress.  *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S.

---

[4] Plaintiff also suggests that Defendants have retaliated against him for filing grievances, which they learn about because the grievance process is not confidential.  Plaintiff's claims of retaliation are addressed separately *infra*.

463, 464 (1979).  In *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999), the Sixth Circuit explained the nature of the right:

> The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances."  U.S. Const. amend. I.  "The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression."  *McDonald v. Smith*, 472 U.S. 479, 482 (1985).  The First Amendment protects Apple's right to petition, but his suit is founded completely on a mistaken reading of that Amendment.  A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views.

*Apple*, 183 F.3d at 479; *see also BPNC, Inc. v. Taft*, 147 F. App'x 525, 531 (6th Cir. 2005) ("The purpose of the Petition Clause, though, is to ensure that citizens may communicate their will through direct petition to the legislature and government officials.").  Thus, Plaintiff has a First Amendment right to file grievances against prison officials without retaliation, *Herron v. Harrison*, 203 F. 3d 410, 415 (6th Cir. 2000), but the amendment does not require the government to offer any particular process or to consider, respond to, or grant relief on that grievance.

Plaintiff's allegations reveal that he is trying to expand his right to petition for redress—to complain about prison officials—into a right to compel those officials to listen, or at least to follow their own procedures.  As discussed, Plaintiff has no such right.

Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances.  *See Cruz v. Beto*, 405 U.S. 319, 321 (1972).  "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact."  *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)).  Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process.  *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).  Even if Plaintiff were

improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

In light of the foregoing, Plaintiff fails to state a cognizable First or Fourteenth Amendment claim based on the alleged interference with his prison grievances.

## V.     Due Process—Property

Plaintiff alleges that Defendants removed his personal property in late October 2020 and did not return it until January 10, 2021. In addition, he suggests that, when his property was returned to him, some part of it was missing.

To the extent that Plaintiff claims that he was permanently deprived of some portion of his property, his due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due

process of law." *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not and cannot sustain his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013).  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers."  Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Accordingly, to the extent that Plaintiff alleges that some of his property was never returned to him, his claim is barred by *Parratt*.

Moreover, to the extent the Plaintiff's claims are not barred by the *Parratt* doctrine, he fails to state a claim.  As discussed, in order to establish a due process violation, Plaintiff must

demonstrate that he has been deprived of life, liberty or property, without due process of law. *Women's Med. Prof'l Corp.*, 438 F.3d at 611; *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005); *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).   Analysis of a procedural due process claim involves two steps:   "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."   *K'y Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.   *See Meachum v. Fano*, 427 U.S. 215, 225.   In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.   According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."   *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).   The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship.   *Sandin*, 515 U.S. at 484; *Wilkinson*, 545 U.S. at 222–23.

Plaintiff does not allege that he has been subjected to a sanction that will inevitably affect the duration of his sentence.   In addition, the deprivation of personal property is not of sufficient significance to be protected by the Due Process Clause.   Prisoners do not have a constitutional right to maintain a particular amount of property in their cells.   *See Friend v. Chapleau*, No. 95-5628, 1995 WL 607835, at *2 (6th Cir. Oct. 13, 1995) (holding that the

defendant did not have a constitutional right to possess unlimited amounts of legal property); *see also Smith v. Ortiz*, No. 05-1211, 2006 WL 620871, at *2 (10th Cir. Mar. 14, 2006) (recognizing the distinction between the right to own property and the right to possess it while in prison and holding that, when a prisoner was allowed to send his property to another location, he was not deprived of property); *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) ("The regulation of type and quantity of individual possession in cells is typical of the kinds of prison conditions that the Court has declared to be subject to the . . . analysis set forth in *Sandin*.").

In the instant case, Plaintiff alleges only that his personal property was not returned to him for two-and-one-half months after it should have been returned.  Such allegations fall well short of an atypical and significant deprivation protected by procedural due process.

For both reasons, Plaintiff's due process claim based on the withholding of his property will be denied.

## VI.    Eighth Amendment

Plaintiff alleges that Defendants have violated his Eighth Amendment rights in a number of ways.  First, he alleges that Defendants Mayhew, Mackiey, and Balm beat and kicked him on November 2, 2020.  Second, he alleges that Defendant Shiemburger spit at him once, deprived him of his food on an unspecified number of occasions, and issued a nonspecific threat against him.  Third, Plaintiff contends that Defendants Mayhew, Wart, Mackiey, Bostwick, and Balm verbally harassed him, made threatening remarks, suggested he kill himself, and called him a "rat."  Fourth, he alleges that Defendant Mayhew induced Inmate Mark to pull a weapon on Plaintiff.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous" nor may it contravene society's "'evolving standards of decency.'"  *See Rhodes v. Chapman*, 452 U.S. 337,

345-46 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "'involve the unnecessary and wanton infliction of pain.'"  *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

### A.    Excessive force & solicitation of excessive force

Plaintiff alleges that, on November 2, 2021, Defendants Mayhew, Mackiey, and Balm beat and kicked him without a legitimate penological justification.  In addition, Plaintiff alleges that Defendants Mayhew and Wart attempted to hire another prisoner to stab Plaintiff. Plaintiff alleges that these actions by Defendants Mayhew, Mackiey, Balm, and Wart violated the Eighth Amendment.

Among unnecessary and wanton infliction of pain barred by the Eighth Amendment are those that are "'totally without penological justification.'"  *Rhodes*, 452 U.S. at 346.  The

Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986), should be applied. *Hudson*, 503 U.S. at 7; *see also Wilkins v. Gaddy,* 559 U.S. 34, 37–39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

On initial review, the Court concludes that Plaintiff's allegations that Defendants Mayhew, Mackiey, Wart, and Balm attacked Plaintiff and/or attempted to hire a prisoner to attack Plaintiff are sufficient to state an Eighth Amendment claim.

Plaintiff also alleges that Defendant Globe ordered or encouraged Defendants Mayhew, Mackiey, Wart, and Balm to attack him. Although Plaintiff's allegations are thin, the Court concludes that this claim against Defendant Globe may proceed.

### B. Verbal harassment

Plaintiff alleges that Defendants Mayhew, Wart, Globe, Mackiey, Bostwick, Balm, and Shiemburger verbally harassed him. He also alleges that, together with other verbal harassment, Defendants Mayhew, Mackiey, Wart, and Bostwick threatened his life on one or more occasions.

Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955.

Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  *Id.*; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights.") Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude.  *See Torres v. Oakland Cnty.*, 758 F.2d 147, 152 (6th Cir. 1985); *see also Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").  As a consequence, Plaintiff's allegations of general verbal harassment, standing alone, fall short of demonstrating an Eighth Amendment claim.

In addition, the Sixth Circuit long has held that mere idle threats are inadequate to trigger Eighth Amendment protection.  *See, e.g.*, *Johnson*, 357 F.3d at 546.  Plaintiff, however, alleges that Defendants Mayhew, Wart, Mackiey, and Bostwick directly and specifically threatened his life one or more occasions.  The Sixth Circuit recently held that, while verbal harassment ordinarily fails to rise to an Eighth Amendment violation, death threats may in some

circumstances rise to that level.  *See Small v. Brock*, 963 F.3d 539, 541–42 (6th Cir. 2020).  In *Small*, the court recognized that "[a] threatened loss of life, when made credible by the aggressive brandishing of a deadly weapon, is beyond the type of "unpleasant experience" that prisoners must endure and suffices to state an Eighth Amendment claim.  *Id.* (citing *Johnson*, 357 F.3d at 546, and *Hudson*, 503 U.S. at 16 (Blackmun, J., concurring) (noting the Supreme Court's rejection of a significant physical injury requirement and using the example of death threats with a gun to illustrate an infliction of psychological suffering prohibited by the Eighth Amendment)).  The *Small* court therefore held that "a prisoner states an Eighth Amendment claim by alleging that, without provocation, a prison official threatened the prisoner's life on multiple occasions and took concrete steps, such as aggressively brandishing a deadly weapon, to make those threats credible."  *Id.* (citing *Irving v. Dormire*, 519 F.3d 441, 448–50 (8th Cir. 2008) (finding that "objectively credible" death threats that cause a prisoner to fear for his life violate the Eighth Amendment); *Chandler v. D.C. Dep't of Corr.*, 145 F.3d 1355, 1360–61 (D.C. Cir. 1998) (same); *Northington v. Jackson*, 973 F.2d 1518, 1523–24 (10th Cir. 1992) (same); *Grant v. Foye*, 981 F.2d 1258, at *2 (9th Cir. 1992) (table) (same); *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978) (per curiam) (same)).

In the instant case, the death threats issued by Defendants Mayhew, Mackiey, Wart, and Bostwick were detailed and repeated.  In addition, they followed a beating by Defendants Mayhew, Mackiey, and Balm and an attempt to hire another prisoner to attack Plaintiff by Defendants Mayhew and Wart.  Under these circumstances, Plaintiff's allegations that Defendants Mayhew, Mackiey, Wart, and Bostwick threatened to kill him are sufficient to state a claim against them.  However, Plaintiff's allegations of verbal harassment by Defendants Balm, Globe, and Shiemburger, however reprehensible, are insufficient to state an Eighth Amendment claim.

### C.      Spitting & denying food

Plaintiff claims that Defendant Shiemburger once spit on him and denied him a meal on one or more unidentified occasions.  Plaintiff also alleges that Defendant Bostwick denied him a meal on one occasion.

The Supreme Court has never held that every intentional touch or assault violates the Eighth Amendment.  Instead, to implicate the Eighth Amendment, the force must constitute a malicious or sadistic use of force the nature of which is "of a sort repugnant to the conscience of mankind." *See Hudson*, 503 U.S. at 9–10 (1992); *Wilkins*, 559 U.S. at 36–38.  While the Court acknowledges that intentionally spitting on an inmate is demeaning and repellant, courts routinely have held that isolated incidents of spitting constitute the sort of de minimis force which do not implicate the Eighth Amendment.  *See, e.g., Williams v. Gobles*, 2000 WL 571936, at *1 (6th Cir., May 1, 2000) (allegations that prison guard verbally harassed and spat on prisoner do not state a claim on which relief may be granted); *Gill v. Tuttle*, 93 F. App'x 301, 303 (2d Cir., Mar. 29, 2004) (single act of spitting on prisoner does not rise above "a de minimis use of force" and, therefore, does not state an Eighth Amendment claim); *Watson v. Dunn*, 2016 WL 1170752 at *2 (W.D. La., Jan. 12, 2016) ("the alleged wrongdoing—spitting one time on Plaintiff—even if intentional was not harmful enough to establish a constitutional violation"); *Gordon v. Rondeau*, Case No. 2:16-cv-89, ECF No. 62, 64 (W.D. Mich., Feb. 8, 2018) (an isolated spitting incident "does not rise to an Eighth Amendment violation").  Plaintiff's allegation that Defendant Shiemburger spit on him therefore fails to state an Eighth Amendment claim.

"The Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food . . . ." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832).  The Constitution "does not mandate comfortable prisons," however.

*Rhodes*, 452 U.S. at 349.   "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.  Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation.  *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered); *see also Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

Plaintiff's allegations that Defendants Shiemburger and Bostwick denied him at least one meal on unspecified occasions fall short of stating a claim under the objective prong of the deliberate-indifference standard.  Consequently, Plaintiff's allegations concerning the denial of meals do not state a plausible Eighth Amendment claim.  *See Iqbal*, 556 U.S. at 679 (noting that the allegations must permit an inference of more than a "mere possibility" of misconduct).

Plaintiff therefore fails to state an Eighth Amendment claim against Defendant Scheiburger or Bostwick based on the denial of meals.  Because Plaintiff makes no further

allegations against Defendant Shiemburger, the Court will dismiss Plaintiff's complaint against him.

## VII.    Retaliation

Plaintiff alleges that the actions of Defendants Mayhew, Wart, Globe, Mackiey, Bostwick, and Balm—exercising or encouraging the use of excessive force, repeatedly harassing and threatening to kill Plaintiff, conducting a retaliatory cell search, and depriving him of his property—were taken in retaliation for Plaintiff's exercise of his First Amendment right to file grievances.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  Plaintiff's allegations concerning the subject matter of his grievances—the use of excessive force and harassment—are sufficient to support the first element of the retaliation claim.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from

exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Plaintiff's allegations also are sufficient to support the second element of the test.

However, Plaintiff's claim fails on the third element. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Although Plaintiff alleges that Defendants retaliated against him, he utterly fails to allege that the retaliation was motivated by Plaintiff's filing of grievances. Instead, he repeatedly states that Defendants harassed and beat him because Defendant Globe alleged that Plaintiff had raped her or a woman she knew and because of his criminal history. While Defendants' actions may have been taken in retaliation for something, they were not taken in retaliation for Plaintiff's

exercise of his First Amendment rights.  Accordingly, Plaintiff's conclusory allegation that he was subjected to retaliation in violation of the First Amendment fails to state a claim.  As a consequence, the Court will dismiss Plaintiff's retaliation claims against Defendants Mayhew, Wart, Globe, Mackiey, Bostwick, and Balm.

## VIII.   Pending Motion

Plaintiff has filed a motion to appoint counsel (ECF No. 2).  Indigent parties in civil cases have no constitutional right to a court-appointed attorney.  *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion.  *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances.  In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel.  *See Lavado*, 992 F.2d at 606.  The Court has carefully considered these factors and determines that, at this stage of the case, Plaintiff has not demonstrated sufficiently exceptional circumstances warranting the appointment of counsel. Plaintiff's request for appointment of counsel (ECF No. 2) therefore will be denied.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Shiemburger will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants:  Plaintiff's due process claims concerning his grievances and his property; his due process claims based on prison

policy; his First Amendment claim under the Petition Clause; his Eighth Amendment claim against Defendant Bostwick based on the denial of one or more meals; his Eighth Amendment claims against Defendants Balm and Globe based on verbal harassment; and his retaliation claims against Defendants Mayhew, Wart, Globe, Mackiey, Bostwick, and Balm.   Plaintiff's other Eighth Amendment claims against Defendants Mayhew, Wart, Globe, Mackiey, Bostwick, and Balm remain in the case.  The Court will deny Plaintiff's motion to appoint counsel.

An order consistent with this opinion will be entered.

Dated:   July 7, 2021                               /s/ Janet T. Neff
                                                    Janet T. Neff
                                                    United States District Judge